United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 13, 2006**

Charles R. Fulbruge III
Clerk

REVISED JANUARY 30, 2007

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 05-20831

JULIANA ADENIKE OGUNFUYE,

Petitioner-Appellant,

versus

HIPOLITO ACOSTA, et al.,

Respondents-Appellees.

Appeal from the United States District Court
for the Southern District of Texas
(No.  4:05-CV-551)

Before REAVLEY, STEWART and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Juliana Ogunfuye challenges the district court's summary judgment ruling dismissing her

petition for a naturalization hearing under 8 U.S.C. § 1447(b) (2006).  We affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND

Ogunfuye is a citizen of Nigeria and a permanent resident of the United States.  Ogunfuye has

two prior convictions for immigration purposes.  In 1984, she pled guilty to theft of $20 - $200.  In

1990, she was convicted on multiple counts of forgery and theft of over $20,000.

---

[*]Pursuant to 5ᵀᴴ CIR. R. 47.5, the court has determined that this opinion should not be published and is not
precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

On April 22, 2003, Ogunfuye applied to Citizenship and Immigration Services ("CIS") for U.S. citizenship. Ogunfuye arrived for a CIS naturalization examination, and at some point was arrested by Immigration and Customs Enforcement ("ICE") and processed for removal.

Pending the outcome of removal proceedings, Ogunfuye was released on her own recognizance. She filed a petition in district court for a hearing pursuant to § 1447(b), which gives U.S. district courts jurisdiction over naturalization applications that haven't been acted on for over 120 days following a naturalization interview. Pursuant to 28 U.S.C. § 636(c) (2006), both parties agreed to argue the case before a magistrate judge. The magistrate judge, reasoning that the court lacked jurisdiction under § 1447(b) because there was never an interview and because of ongoing removal proceedings, granted summary judgment for the government. Ogunfuye appeals the lower court decision, arguing that immigration officials in fact did interview her and that ongoing removal proceedings do not deprive district courts of jurisdiction over naturalization applications.

II. STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed de novo. *Hasty v. Trans Atlas Boats, Inc.*, 389 F.3d 510, 512 (5th Cir. 2004). Questions of law are also reviewed de novo. *Requena-Rodriquez v. Pasquarell*, 190 F.3d 299, 309 (5th Cir. 1999).

III. DISCUSSION

Although Ogunfuye, in response to the government's summary judgment motion, stated that she was arrested when she *arrived* for her interview, she also stated in her original petition that "an examination was held." Likewise the government argues that no examination was held even though a letter attached to its summary judgment motion states "[the CIS] interviewed your client on

November 26, 2003." In response to the government's arguments for summary judgment, namely that no interview had taken place, Ogunfuye neglected to expressly refute the government's claim that no interview had occured. Ogunfuye's brief in opposition to the government's motion for summary judgment stated: "On November 26, 2003, the Petitioner arrived for an interview on her application for naturalization; 2) At that time she was detained by an officer of the Department of Homeland Security."

Although summary judgment requires the nonmovant to plead specific facts demonstrating a basis for trial, it is only proper when the record, viewed in the light most favorable to the nonmovant, demonstrates that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also* FED. R. CIV. P. 56(c). While Ogunfuye did not explicitly deny the government's allegations, she also didn't explicitly concede that she was arrested before the interview. There appears to be little in the record to support the magistrate judge's conclusion that no interview had taken place.

Nevertheless, even if an interview had been held, there was no proper jurisdictional basis for the magistrate judge to review Ogunfuye's naturalization application. First, in immigration proceedings, an alien must exhaust all administrative remedies before petitioning for district court review. 8 C.F.R. § 336.9(d) (2006). Ogunfuye could have halted deportation by establishing "prima facie" eligibility of naturalization or a matter involving exceptionally appealing or humanitarian factors. She refused to pursue this remedy even after the CIS wrote her a letter concerning her administrative options. 8 C.F.R. § 1239.2(f) (2006).

Second, because the Attorney General was barred by 8 U.S.C. § 1429 (2006)[1] from reviewing Ogunfuye's application, by adjudging her claims for naturalization the district court would have been doing exactly what Congress stated it could not, which is rendering an opinion on an alien's prima facie naturalization claims. Prior to 1990, district courts had exclusive jurisdiction to naturalize aliens. In order to prevent a "race" between the alien to gain citizenship and the government to deport, district courts were prohibited from naturalizing an alien for whom there was a pending deportation proceeding. *See Shomberg v. United States*, 348 U.S. 540, 544 (1955); § 1429 (amended 1990). In 1990, Congress removed naturalization jurisdiction from the district courts, placing the ability to naturalize aliens exclusively with the Attorney General and with the same limitations. *See* § 1429.

Third, § 1447(b) was intended to address administrative untimeliness. It was not meant to give aliens a means to adjudicate prima facie naturalization claims in district court where the Attorney General was prevented from acting under § 1429. When introducing the amendment that became § 1447(b), the sponsor, Congressman Sid Morrison cited administrative delays and backlogs as a "very substantial concern." *See Castracani v. Chertoff*, 377 F. Supp. 2d 71, 73 (D. D.C. 2005) (quoting 135 CONG. REC. H4539-02 (1989) (statement of Rep. Morrison)). By the government's own admission, there is very little case law covering this situation and no governing legal authority, however, it is clear that § 1429 does not provide aliens with § 1447(b) jurisdiction. Federal law provides for judicial review of naturalization applications in only two limited circumstances, where a naturalization application is denied twice, first in an initial review and later in front of an

---

[1]"[N]o application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding . . . ." *See* § 1429.

immigration official, or where there is significant untimeliness or administrative inaction by the government in reviewing the application. *See* 8 U.S.C. §§ 1421(c), 1447(b) (2006). Neither circumstance applies to Ogunfuye.

Fourth, although other district courts have held that once a § 1447(b) petition is filed, district courts have exclusive jurisdiction, stripping the CIS of the ability to deny or approve an application, *see United States v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004) (en banc); *Zaranska v. United States Dep't of Homeland Sec.*, 400 F. Supp. 2d 500 (E.D. N.Y. 2005); *Castracani*, 377 F. Supp. 2d at 71-74, those decisions all dealt with situations where the government, after neglecting to adjudicate an application within 120 days, attempted to approve or deny an alien's naturalization application before the district court had the opportunity to review it.

These cases do not address the situation here, where § 1429 is the sole cause for the 120-day delay.

*Chavez v. INS*, 844 F. Supp. 1224 (N.D. Ill. 1993) is directly on point. Following a nearly year-long delay in the adjudication of his naturalization application, Jorge A. Chavez petitioned for § 1447(b) relief. The district court remanded the application back to the Attorney General with instructions to adjudicate it within sixty days. Instead, the government instituted removal proceedings against Chavez and denied his application on the theory that under § 1429 it could not adjudicate an application of an alien against whom deportation proceedings were pending. Chavez, like Ogunfuye, refused to exhaust all administrative remedies and applied for district court adjudication, arguing that there was already § 1447 jurisdiction. The court responded: "We cannot agree . . . that the legislature ever intended § 1447(b) to permit a district court to circumvent the appeals process provided for by statute." *Chavez*, 844 F. Supp. at 1225. Consistent with current federal law, the court held that Chavez could not seek judicial review of his application until he had exhausted all his remedies. *Id*.

5

Although *Chavez* is comparable, arguably there were even more compelling reasons on these facts for the district court to refrain from reviewing Ogunfuye's application. Unlike in *Chavez*, here there was no initial government inaction. Ogunfuye's argument for § 1447 jurisdiction was based wholly on the government's inability to adjudicate her application under § 1429. *See also Zaidi v. Chertoff*, No. 1:06-cv-1133, 2006 U.S. Dist. LEXIS 79831, at 10-11 (N.D. Ill. Nov.1, 2006) (refusing to grant § 1447(b) review until petitioner had exhausted all administrative remedies); Charles Gordon, Stanley Mailman, & Stephen Yale-Loehr, *Immigration Law and Procedure*, 7-95 IMMIGRATION /LAW & PROCEDURE § 95.02 at n.54 (2006) ("current law now prohibits the naturalization of a person against whom a final finding of deportability is outstanding").

Congress did not remove all jurisdiction from the courts. Under limited circumstances, district courts can *review* the naturalization decisions of the Attorney General. *See* 8 U.S.C. § 1421(c) (2006). Additionally, after a naturalization application is denied, an alien can request an administrative hearing before an Immigration Judge. *See* § 1447. If after 120 days following an examination, the Attorney General has neglected to approve or deny an application for naturalization, an alien can petition the district court for a hearing under § 1447. The district court can itself approve or deny the application or remand it back to the Attorney General with appropriate instructions. *Id*.

In this case, even if the district court decided to remand, the Attorney General is barred by federal statute from adjudicating Ogunfuye's naturalization application. *See* § 1429. On one hand, § 1447 very plainly provides the district court jurisdiction when the Attorney General, irrespective of the reasons, fails to adjudicate an application within 120 days after an examination is held. On the other hand, Congress has plainly indicated that the adjudication of naturalization applications should

6

cease when orders of removal are issued prior to a § 1447 petition. Congress instituted various mechanisms of administrative relief when aliens are under orders of removal and provided for judicial review only when those mechanisms are exhausted. *See* § 1421. Ogunfuye argues that § 1429 only prevents the Attorney General from reviewing prima facie naturalization claims while an order of removal is pending, however in 1990, Congress removed the district courts' ability to adjudicate prima facie naturalization claims. Section 1429 only speaks in terms of the Attorney General reviewing these types of applications because under current federal law only the Attorney General has the authority to review them. Thus, the district court did not err by refusing to adjudicate Ogunfuye's application as there was no appropriate basis for it to do so. Because inaction based on § 1429 alone is not a legitimate basis for the district court to exercise cause § 1447(b) jurisdiction, Ogunfuye is required to exhaust all administrative remedies before petitioning for judicial review of her naturalization application.

## IV. CONCLUSION

The judgment of the magistrate judge is AFFIRMED.

AFFIRMED.

7